Good morning, Your Honors. My name is Jay Spillane. I represent ALS Scan. We submit that this is a case in which my client was deprived of the right to have a jury determine its claims for secondary copyright infringement and trademark infringement, although there was ample disputed issues of tribal fact in the court when the district court improvidently decided that the undisputed facts warranted summary judgment in favor of Steadfast. We had submitted evidence that this website, ImageBam, frequently hosted entire galleries of infringing content that belonged to my client. It also bore the ALS trademarks. The website sat on servers owned and operated by the defendant, Steadfast. Steadfast had received 1,517 notices of infringement on this website, 185 of which pertained specifically to my client's content. It gave notice of infringement of some 37,000 individual works. Why isn't it enough under this Court's Perfect Ten v. Amazon ruling that Steadfast forwarded the DMCA notices and the offending materials were taken down? Isn't that enough? Isn't that a simple measure under our precedent? Well, there's two problems with that. One is the district court judge ignored the deposition testimony, which I submitted in opposition of summary judgment by Mr. Zimmerman, who was a Steadfast 30B6 representative, who admitted that Steadfast did absolutely nothing in response to the notices. When they had a prior problem, they heard about takedowns, and he just assumed that that was what was going on. But in fact, all the pictures were indeed taken down. The pictures were taken down, but in terms of what Steadfast did, Steadfast contradicted itself in the declaration testimony. They contradicted the deposition testimony by then claiming that they did something. But here's the key difference. What else would have prompted them being taken down? The notices were also sent directly to the owner of Image Bank. So Steadfast knows that's what's going to happen. I mean, it may be literally true, didn't do anything, but didn't do anything because they know the problem is going to be resolved. Well, they didn't even bother to check. They didn't ask. They didn't say, are you people doing something about this? What's happening? That was one thing that they, a simple measure that they could have done and didn't do. There was at least disputed evidence about that. Would anything produced any different result than was produced? Here's the simple measure they had available to them and didn't do. Would it have produced any different result than what happened? I'm sorry, Judge Clifton, can you repeat your question? It seems to me you're trying to say they were obligated to take an act that was unnecessary because they knew it was going to be taken down anyway, because it was taken down anyway. So I'm not sure what the difference is. If they had done what you're asking, would anything different have happened? Here's what was different that should have happened. Let me get an answer to that question first. If they had done what you asked, would there have been any different result? Yes. If they had done what I asked, they would have said, they would have learned that they were taking it down, and then they should have asked, but why are we getting so many notifications? We've gotten 1,500 of these. Do you really have lawful content? What's going on here? Can we see your page? Can we look at your enforcement quality? They should have made those inquiries. Let me ask you a different question, which is the whack-a-mole problem, which I completely  It's the whack-a-mole problem. Is there support for the proposition that you can have infringement, contributory infringement for an infringement that hasn't occurred yet? There's support for the notion that you can have contributory infringement by failing to enforce your own policy to terminate repeat infringers. That is the simple measure which Judge Wu acknowledged Steadfast had, and it failed to take. There is ample authority for the general proposition that a service provider, after a specific notice of infringement, can be held contributory liable for infringement by continuing to provide the site and facilities for infringement. This Court has held that numerous times. What should have happened after a certain point in time, and it was up to the jury to decide what that point in time was, Steadfast should have said, you know what, this is too much of a problem. You people don't seem to be respecting copyright and trademark, and I'm sorry, we can no longer provide your services. You've got to move on and go find another host. Give me a case. You said we've cited it. We've said it several times. Give me your favorite case that supports the proposition that would apply in a factual situation like this. I mean, frankly, I'm sympathetic to the concern you've raised, and what I need to do is figure out for an infringement that hasn't occurred yet, because we're now talking about things happening in the future, the question you say they should have asked is how come this keeps happening implicitly, it's going to keep happening. So what case helps us reach the conclusion that you can be held liable for contributory infringement if the infringement is still in the future? Yes. Well, let's take, I'll take one. Let's take the FonoVisa versus Cherry Auction case. And Judge Clifton, you're counsel for FonoVisa, and you complain that one of the vendors in my flea market here keeps having bootleg FonoVisa records, and the sheriff comes down once and twice and three times, and every time the auction site goes down to look into it, they say, oh, well, we'll take those particular ones off the shelf. At some point, if you're counsel for FonoVisa, you're going to make the argument that, look, even though they keep taking off the particular bootlegs when they receive notice from the sheriff, at some point you've got to kick these people out of your flea market. But that was a physical swap meat case where you don't have this DMCA mechanism for taking down materials. I don't know if FonoVisa really is relevant here. FonoVisa has been cited repeatedly by this court in the online circumstances. It's been Perfect Ten versus Amazon, Columbia Pictures versus Fung. If you look at the jury instruction for material contribution, it's in the use footnote. It's ubiquitous. Well, parts of it, but in terms of, I think the Perfect Ten, the Amazon case specifically says, FonoVisa says, we've refined the test further in the cyberspace context. Because again, in a swap meat, you don't have that mechanism of, you know, you tell somebody there's an infringed material, you can take it down. Well, Judge Wu called my theory novel, I think the shoe was on the other foot. He did not cite a single case which says that no matter how many notifications you get of infringement by your customers, thousands, hundreds of thousands, millions, you never come under the burden to take the ultimate simple measure of terminating the customer's account. Not one. He cited Ludvarts about general knowledge, but that was a case where the copyright owner failed to give specific notice. In Ludvarts, they said, well, here's a list of our copyrighted works, go take them off your system. Here, by contrast, we gave highly specific notice. Mr. Easton gave the hyperlink for each and every one of these 30,000 stolen works on that site. And he cited the Napster case, which is his only other authority, which is an odd case to cite, because there the judge granted a permanent injunction against Napster because it continued to provide the site and facilities for infringement after highly specific notices from the record companies that the files were there. So, I think he was the one that had no authority. And here's my question, Your Honors. The copyright law book before the DMCA, Congress said in enacting the DMCA, is supposed to strike a balance between copyright owners on the one side and the service providers on the other. And the balance that was struck is that you've got to provide the service providers specific knowledge of where the infringement is before you can argue that they're liable for either failing to take it down or for enforcing a repeat infringer policy. Judge Wu's decision, if it stands, and if Your Honors affirm it, is going to create a huge imbalance. Hosts, these content delivery networks, like we had Cloudflare in the case, they're going to be immune from any argument of liability, even if they get millions of infringement notice by one of their customers, as long as that customer is smart enough to have a takedown staff to take down the works that they got notice of that day. Even though it eventually becomes inevitable, we all know that the next morning there's going to be another set of infringements. I could have a site called piratedcontent.com. Come get your free content when we can sell it for free because we steal it. And I can be hosted by Steadfast, and I can be on Cloudflare's content delivery network, and they can be free of any pressure to fire me simply because I'm smart enough to have a takedown staff. That's a huge imbalance toward the service providers. And Judge Clifton, I think copyright owners shouldn't be faced with this whack-a-mole, this endless whack-a-mole problem, simply because somebody's gamed the system so that even though we know, as sure as we know, the sun's going to rise, there's going to be another infringing set of ALS works on ImageBam. I just can't predict until I get up that morning and look what's the next set they stole. These people don't respect copyright. They've got to be sent packing, and I think that's the minimum that courts ought to be asking service providers to do with this kind of a record. The BMG v. Cox case, I think, is the way this case should have gone. In BMG v. Cox, the district court judge denied the service provider's summary judgment motion because there were ample evidence that they didn't do enough to consider terminating the accounts of these account holders who were constantly downloading the musical works. And then it went to the jury, and the jury returned a verdict for contributory infringement precisely because Cox wouldn't cut off people's accounts. I think that's the guiding authority here. I also want to remind this panel that only two weeks earlier, Judge Wu essentially agreed with my position when we had the summary judgment for CloudFlare. CloudFlare was similar to Steadfast. It wasn't a host, but it's a content delivery network, and what those folks do is they have data rooms all over the globe, and they create multiple cached copies of works so that when you seek to pull it down, you'll get your content faster from the nearest cache. Same type of thing, thousands of notices, tons of infringement. CloudFlare doesn't terminate anybody, and there wasn't even evidence that our notices have resulted in takedowns, and Judge Wu said CloudFlare did have a simple measure which it refused to take, which was to terminate those accounts which were the subject of repetitive notices of huge amounts of infringement. And he should have applied the same theory here in Steadfast, and I don't know whether he forgot what he did or what, but that's the better authority here, and the BMG Cox case is the better authority here, and I'm imploring your honors to consider the impact on copyright owners of this improvident ruling for which Judge Wu had no supporting authority. We've all mostly briefed the copyright issues, but I don't want to lose sight of the trademark issues. We submitted evidence that every one of these pictures had ALS's registered mark, and all those notices dealt with the trademark as well. Judge Wu granted summary judgment because he cited the Visa case about direct control and monitoring, but Visa was a case where they were just processing the payments. That's way too distant from the websites to have control and monitoring. We cited the Louis Vuitton case, which is a case about hosts, and there they said because the host can pull the plug on the website, that's enough direct control and monitoring for purposes to contribute to a trademark infringement, and for that reason, I would implore your honors to reverse the summary judgment. Let a jury decide the trademark as well as the copyright. I see I'm getting close to my reserved time, so I'll resolve the rest of my comments unless your honors have any further questions. Thank you. Good morning, your honors. This is, if it may please the court, John Ambrosio on behalf of the appellee, Steadfast, in ALS's case and the appellant in our appeal of the attorneys' fees case. Steadfast has always been a good internet citizen. When notified of infringements, it took those simple measures to remove those images from the websites under established law. This court correctly ruled that Steadfast was not liable for either contributory copyright infringement or trademark infringement. Why couldn't the jury have concluded based on evidence presented about the volume and time period of requests that Steadfast knew or should have known that further infringements were going to occur if it simply continued doing what it was doing? Well, your honor, the law says that it's actual knowledge, and with that actual knowledge, did the service provider take simple measures to get those images removed? And we, in fact, did. Well, but that's not really the question I posed. Why couldn't a jury conclude you knew damn well that these violations were going to continue? I mean, we're talking hundreds of notices and thousands of images. It doesn't take a rocket scientist to figure out that this problem might not actually have been solved by the simple measures that you alluded to. We have to also remember, your honor, that Steadfast wasn't in control of those ultimate infringers. I don't think that helps very much either, because you can set up a structure with ultimately Steadfast does really know what's going to keep happening. Why isn't Steadfast liable? Why couldn't a jury reach that conclusion? That would mean that the only other simple measure, which is an extreme measure, would have been to pull the plug. Yes. Well, okay, that's been offered up. And if that's what it takes to stop the infringements from continuing to happen, what's wrong with that? Well, then what's to stop a plaintiff from bringing a lawsuit when there's only five notices? I don't think it's... Because you're not going to be able to persuade a jury that it's as inevitable as you're going to be able to when there's 1,500. The case law, especially in the Ninth Circuit, is really numbers agnostic. If you look at cases like Cox, the plaintiff has brought up and said they're very similar. There wasn't so much the number of notices. It was the fact that they thumbed their noses at the notices, that they didn't take efforts with those notices, that they basically ignored the notices. I'm not saying the jury, look at this evidence and say, steadfast, must have known that the infringements would continue. So that the simple measure that they took was inadequate. Because ultimately, the question of law would be, even if they had found that, that that was not sufficient. Why not? Because the law specifically says that simple measures are enough. And in this case, simple measure isn't enough if you know the infringements are going to keep happening. But you don't know which infringements are going to keep happening. This is what Judge Wu found that this theory of... But I'm not sure why that should make a difference. I mean, I really don't know the answer to this question. I'm not trying to be... I understand your argument. ...Kingsfield in the paper chase and so forth. But I'm not sure what it is that would prevent a jury concluding, yep, they must have known. And the simple measure wasn't enough because they must have known it wasn't going to be enough. Well, if that were the case, Your Honor, we would be out on a JMLOV anyway. Because under the law, the number of notices or the effect is only directed at those simple measures and whether the defendant took those simple measures... Are you citing the law? Are you going to need to give me something more specific than that? I don't take on faith that the law is incapable of dealing with anticipated violations. Well, Your Honor, even in the cherry auction case, which is cited by the plaintiff often, what came out was the fact that the service provider, which was only providing server space, and that's one thing we have to keep in mind, this defendant only provided the storage space. Here's your server. Do what you're going to do with it. And in fact, the plaintiff could have sued ImageBam, could have sued Flicksaw, who was the operator of the ImageBam website, but chose not to. So they've made this argument that if you uphold Judge Wu's decision that it's going to just destroy things. Well, that's not the case. The plaintiff had every opportunity to go after the infringers, who were their own members, because the only members that could upload the photographs had to have access to the ALS website, which were their members. Number two, they could have sued ImageBam directly or their owner, Flicksaw, they chose not to. So they do have alternatives, Your Honor. I'm not sure how that makes your client less potentially liable, but I'd take your answer. Plaintiff also brought up the fact of CloudFlare and the dichotomy with Judge Wu's previous decision. And really, Judge Wu, I believe, and the CloudFlare defendant, was different and steadfast in that, as plaintiff actually said, CloudFlare created cached copies of the infringing images themselves on U.S. soil. The cached copies themselves could represent direct infringement. In fact, CloudFlare did not take simple measures to eradicate the infringements. So the simple measure here was just the notification that there were these violations and that was sufficient, right? That's correct, Your Honor. So is there anything in the record that gives us some sense as to what effect that notification had was it something that continued on and on notwithstanding the notifications? Is there anything in this record that informs us as to what the fallout was in terms of these notifications, whether it was effective or not? Well, it was effective because those images, the specific images that were in those notices, 100% of the time were removed. But how often did this occur? How many times were notifications given? With regards to the plaintiff, 185 notices, Your Honor, during the time period. Over a period of four years. Yeah. Well, doesn't that suggest that it might be something for the jury, as Judge Clifton has suggested, if these are not effective, that maybe this did not constitute a simple measure under the facts of this particular case? I don't think so, Your Honor. I think, again, we have to look at the letter of the law and the fact that CEDFAS acted within the confines of that law at the time, which is simple measures. The notices came in, they were directed. Is it a line to be drawn here? How many notifications have to be given over a period of time? Well, I think that would create more havoc than what plaintiff is worried about. Companies or websites such as Instagram and YouTube would essentially go out of business. They get millions upon millions of notices every year, and they take the simple measures to make sure that those images are taken down, whereas Cox, Cloudflare, some of the other defendants in these other cases did not take simple measures. In fact, they would hide the identity of the actual pictures. So the effectiveness of these notices is an irrelevancy in your position? I'm sorry, Your Honor. The effectiveness is an irrelevancy, just as long as the notices were given as sufficient? Well, they were effective. And what if they were not effective? Well, if they were not effective, that's not the case that we have in front of us. We have a situation where all 100% of the images were taken down, and that's what plaintiff admitted to. But I think that your adversary is arguing that this is going to be a repeat situation. There will be a requirement to constantly send notices. Well, they have another option, Your Honor. They could have sued ImageBand.com and chose not to. I wanted to address both the Fonovisa and Louis Vuitton cases one more time, especially since plaintiff brought up Fonovisa and the swapmeat operator. In that case, Your Honor, the swapmeat operator had a lot more control over the effectual infringements. And in fact, I think one of the key points there, again, was the fact that they hid and refused to divulge the identity or other information to the sheriff in that case, and proceeded to provide not only parking and advertising and plumbing and customers, but the actual facilities for the infringement. They turned a blind eye to it. Yeah. So can you talk a little bit about the counsel fee situation? Because that seems to suggest that we have to remand a lot of historical cases. Appreciate that. How do we obviate that? Yes. Seems that historical research is controlling here. That requires a remand. Yes, Your Honor. Well, that's our whole case is set forth in the brief. It's pretty clear that on the attorney's fees that the district court applied the wrong standard. In fact, unfortunately, the district court, and this is a quote, said the court would exercise its discretion in concluding that this is not an exceptional case in which attorney's fees ought to be awarded to the prevailing party in a copyright dispute. And then it cites the classic media, which is a Lanham Act case. So we do definitely have a situation where the wrong standard was applied. In fact... So I'm a little confused about this because you have Lanham Act violations and you have Copyright Act violations here, I suspect, right? There is a claim for contributory copyright infringement and one for... So how do we dichotomize or prescind what the exceptional circumstance standard should be for one and not for the other and how to carve out the counsel fees as a result of these apparently different standards? Well, I went through extreme measures in our opening brief done in the district court to separate out the percentages for those cases. In fact, we have dollar figures that identify the amounts for specific claims. There is in the record the amount of time that was spent for the Lanham Act case as compared to the copyright case? Yes. So how does this get resolved on remand if it gets remanded because of historical research? Well, I believe that if it gets remanded on the attorney's fees portion of the case that the district court judge will have to revisit the situation. In fact, in his own order, he has stated that plaintiff's theory was novel and that there was no basis in the law for plaintiff's consistent argument in this situation, especially its redundant acknowledgment of the Louis Vuitton case. In fact, if Judge Wu is given the chance to revisit this, I believe under the correct standard which is the exceptional... Not the exceptional case standard but a lesser degree which is... So the problem is that he used the phrase exceptional circumstances in the context of the Copyright Act. That's correct, Your Honor. And does that require reversal because of that? I believe so, Your Honor. So he also considered the Fogarty factors. That's right. All right. And he went through all of them. And I think that he found that one, only one of the five favored an award. So even if the district court erred by inserting the exceptional case standard, would that not be harmless error considering the fact that he did consider the Fogarty factors? Well, Your Honor, I believe that if we look at the district court's opinion itself, he made a lot of generalizations in the opinion. He didn't really particularize what the basis for finding of the Fogarty factors were. I thought he found that one of the five favored, only one of the five favored an award. That's correct, Your Honor. Yeah. But even on the remaining ones, he referred back to his opinions in the other decisions as a basis for denying attorney's fees here. I'd like to remind the court that there were three counts in the beginning of the case, contributory copyright infringement, vicarious copyright infringement, and contributory trademark infringement. It took the plaintiff until the 11th hour to finally dismiss the vicarious copyright infringement when they should have done that months, not if not... years before. And so, if anything, I believe that that portion of the ruling should be revisited by the district court. Can you address the issue of whack-a-mole, the problem, which is a serious problem? I mean, what is the response to that? It may be, you know, under Ninth Circuit precedent, you know, it's too bad. But on the other hand, Ninth Circuit hasn't really explained too much what simple measures means. And, you know, you give example of YouTube, and sure, YouTube, there's a lot of, you know, dumb non-copyrighted material and a lot of dumb copyrighted material as well. But, you know, there are probably some websites that are exclusively or almost all copyrighted material, and that's their whole reason for existing. And those instances, I mean, you know, perhaps ALS is asking for us to really expand our case law in this area. But, I mean, it does seem like a legitimate problem, this whack-a-mole problem, if you have websites that traffic in pirate material. Sure. Your Honor, there's alternatives that the plaintiff can take. One, they could have gone after the individual users. They could also go after the website, ImageBam. Or, in fact, they could use, there's digital technology that will disallow people from copying. So I do understand plaintiff's whack-a-mole complaint, but there's other alternatives. Other than suing these tertiary or very extremely removed defendants, such as Steadfast, who only basically gave the server space. That was it. They had no management control over ImageBam, no management over the content. Really, they were so far removed. There's no other questions, Your Honors. Great. Thank you. Thank you. Thank you. There's been some discussion of YouTube, but the evidence was we had ImageBam. I hope Your Honors will look at and consider the declaration of Eric Penn, paragraphs 8 through 32, that is at ER 878 to 85. Mr. Penn went on at great lengths to talk about six different indicia, which he observed of ImageBam, which gave him the belief that ImageBam was entirely dedicated to the display of stolen adult works. And Steadfast failed to take the simple measure of looking at ImageBam themselves and asking the same question. Are you really trying to do a good job of having licensed stuff and weed out the few outliers? Are you a pirate site? And the jury could have considered Mr. Penn's evidence and drawn the conclusion he did, which is these people are pirates. I also hope that... You're being asked, you're being told there are simple measures your client could take. I shouldn't use the same phrase. So there are things your client could do, such as pursue ImageBam. Oh, we could have done it. We could have done it. So let's say we'd sued ImageBam and settled with them. We just went to trial against Steadfast. The jury wouldn't know what we'd done with ImageBam, and I would have won a motion limiting on that. The jury's got to consider Steadfast's liability. I also hope, Your Honors, we'll read what Carl Zimmerman said when I deposed him. I was rather astonished that Judge Wu found as an undisputed fact that Steadfast did everything he could. I got the greatest hits just in my brief. He said we didn't do anything. I didn't call him. I didn't look. I have no idea whether he came down. But Judge Wu's point was that the images got taken down. That's enough. We found that Steadfast specifically took actions to ascertain they were taken down, which is the opposite of what Mr. Zimmerman did in his deposition testimony. And even under their declaration, where they about faced and contradicted themselves, which should have been a material fact, a warranting denial of summary judgment, they didn't take the simple measure of taking further look at ImageBam to see why you're having such a problem with 185 notices from us and 1,517 in total from all the copyright holders. Your simple measure is to pull the plug. I think you get back to that, right? Well, or the kinder version is to send them, say, look, we just can't work with you anymore, and you got 15 days to go find another site. I mean, something. I mean, going down to the server room and literally pulling the plug out of the wall, I think it's a bit of a euphemism. But you got to tell people, I'm sorry, we can't do business with you anymore. In effect, to sever the relationship. Sever the relationship, maybe in a way that would have been a little smoother for customer relations, but do something. They did nothing, Judge. And I hope you'll consider that evidence in thinking about whether the jury should have decided this and not the judge. Thank you very much for considering my arguments this morning. Great. Thank you. The case is submitted.
judges: Clifton, Block, Lee